**In re Donald Myron CRESS, Barbara Lu Cress.**

**No. 88–1311–C.**

United States District Court, D. Kansas.

Oct. 6, 1989.

Clifford L. Bertholf, Wichita, Kan., for plaintiffs.

Mary May, Wichita, Kan., for defendant.

Edward J. Nazar, trustee, Wichita, Kan.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on appeal of the bankruptcy court's memorandum of decision and judgment of decision which were both filed on May 4, 1988. The bankruptcy court therein granted the motion for summary judgment brought by Agristor Leasing, Inc. (Agristor), finding the agreement between Agristor and the debtors, Donald Myron Cress and Barbara Lu Cress, to be a lease and not a secured transaction. The debtors appeal contending the bankruptcy court erred in discerning what were the uncontroverted facts, in granting summary judgment when discovery was incomplete, and in finding itself bound to the decision of *Agristor Leasing v. Meuli*, 634 F.Supp. 1208 (D.Kan.1986).

A lower court's grant of summary judgment is reviewed *de novo*, and the same summary judgment standards are applied on appeal. *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988); *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). This same rule governs the review of a bankruptcy court's grant of summary judgment.

*In re Stuerke*, 61 B.R. 623, 625 (Bankr. 9th Cir.1986).

Because this bankruptcy appeal includes several procedural challenges to the summary judgment order, a detailed statement of the applicable standards is necessary. In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

An issue of fact is "genuine" if the evidence is sufficient—significantly probative or more than merely colorable—for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact involves "material" facts when proof thereof might affect the outcome of the lawsuit as determined by the controlling substantive law. *Id.* 477 U.S. at 249, 106 S.Ct. at 2510–2511. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

The movant's burden under Fed.R. Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345

(quoting Fed.R.Civ.P. 56(c)). The movant, however, does not have the burden to prove a negative, that is, to disprove the nonmoving party's evidence. *Id.* at 346. Nor do the claims need be proven false; the movant must only establish that the factual allegations are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. These facts must demonstrate a genuine issue remaining for trial and not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986).

Agristor moved for summary judgment arguing that there were no genuine issues of material fact and that the lease agreement attached to its motion was a true lease and not a disguised financing arrangement. In opposing the motion, the debtors first noted that their discovery requests were still outstanding because the bankruptcy court had extended Agristor's response deadline until 20 days after the court's entry of an order on Agristor's motion for summary judgment. Debtors also stated:

This brief sets out the facts that debtors have evidence to support. Additional facts that support debtors' case can be developed through discovery; however, Agristor has not provided even the initial information requested.

(Bankr.Dk. # 81). Debtors then set forth their statement of facts in the next five pages of their brief without any citation to evidence of record and without submitting any affidavits or documentary evidence other than the two purchase orders, the lease agreement, the acceptance supplement, and a letter dated April 2, 1980, from Agristor approving the debtors' lease application.

■ Bankruptcy Rule 7056 provides that Fed.R.Civ.P. 56 applies in all adversary proceedings. Debtors' memorandum in opposition filed with the bankruptcy court failed to comply with Fed.R.Civ.P. 56. First, the debtors' argument on incomplete discovery was not properly supported by an affidavit setting forth the reasons that certain facts, essential to the debtors' opposition, could not be presented by affidavit. Fed.R.Civ.P. 56(f). If they had submitted their affidavit, then the bankruptcy court would have had the discretion to order a continuance to permit additional discovery. *Gray v. Udevitz*, 656 F.2d 588, 592 (10th Cir.1981). Debtors made no request to continue the summary judgment proceedings until further discovery could be completed. Their failure to comply with 56(f) or to seek a continuance precludes debtors from raising as an issue on appeal the necessity of discovery before summary judgment. *Brown v. Chaffee*, 612 F.2d 497, 504–05 (10th Cir. 1979).

Next, the debtors in their opposition ignored the requirement of 56(c) and (e) to serve opposing affidavits or submit additional discovery which would show the existence of specific factual issues for trial. The debtors were required to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)). Even on appeal, debtors still consider it appropriate to rest upon mere allegations in opposing a summary judgment motion, as shown by the following argument in their reply brief: "Even with the disputed facts and undisputed facts, the Court

listed only part of the facts *alleged* by debtors." (Dk. 17 at p. 4) (emphasis added). Consequently, the debtors' allegations do not present material issues of fact which have yet to be decided. The only evidence "on file" is those documents attached to the parties' summary judgment pleadings, and it is upon this evidence alone that the decision must be made whether the transaction between the parties was intended to be a lease or a secured arrangement.

From the evidence of record, the relevant uncontroverted facts include.

1. On March 8, 1980, Donald Cress and Mid–America Harvestore, Inc. executed two purchase orders for a 2560 Harvestore with Goliath unloader, an auger, a conveyor, belts and bunks. One of the purchase orders named Agristor as the "Lending Facility." The purchase order for the larger ticket items described the terms of payment as a yearly lease, required debtor to pay a security deposit, and further provided for the debtor's acknowledgement on the following language: "To the above named dealer: I hereby purchase, or authorize Agristor–Leasing to purchase, the above dicscribed (sic) equipment conditioned upon my finalizing acceptable financing [or] entering into a lease agreement with Agristor Leasing." Donald Cress signed this acknowledgment on the line marked "Lessee" rather than the line marked "Buyer."

2. In a letter dated April 2, 1980, from Agristor, debtors were informed that their lease application had been approved. In pertinent part, the letter stated:

Agristor Leasing has agreed to lease the equipment as listed above for a term of 8 years, with rental payment in the amount of $16,413.91 annually. Equipment cost will be $91,017.00. The Lessee acknowledges that Lessee is not entitled to investment tax credit or depreciation, since Agristor Leasing is the owner-lessor of the equipment.

The letter also conditioned Agristor's approval on, *inter alia,* debtors' execution of the UCC financing statements and the lease agreement.

3. On April 11, 1980, the debtors and Lee Bertholf and Ruth Alice Bertholf executed the agricultural equipment lease on the 2560 Harvestore System with Goliath Unloader and the other items. The term of the lease ran from April 11, 1980 to May 1, 1988, and the lessee was required to make 8 consecutive annual payments of $16,162.78, commencing on May 1, 1981.

4. The debtors and Lee Bertholf and Ruth Alice Bertholf also executed on April 11, 1980, an acceptance settlement which confirmed delivery of the equipment and acknowledged their obligations under the lease agreement.

■■■ To determine the relationship between the parties, the court must consider and construe the written documents pursuant to some relevant principles. When "two or more documents are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter they will be read and construed together." *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 219–220, 531 P.2d 41 (1975) (citation omitted). "[T]he true nature and character of a document is not determined by the name attached thereto but by the intent of the parties as reflected by the terms or the contents thereof." *Id.* at 220, 531 P.2d 41 (citation omitted).

The starting point in analyzing the lease/sale question is the applicable Uniform Commercial Code provision of Kansas, K.S.A. 84–1–201(37) (1988 Supp.) which states, in relevant part:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a "security interest." ... Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest." ... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the

lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Kansas employs the "economic realities" approach in determining whether a transaction labelled a lease is actually a sale. *K–B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1164 (10th Cir.1985); *Agristor Leasing v. Meuli*, 634 F.Supp. 1208, 1214 (D.Kan.1986). As the language of 1–201(37) indicates, the most significant factor in evaluating the economic reality of an arrangement is whether the purchase option price at the expiration of the lease term is nominal. *See Meuli* 634 F.Supp. at 1214. Even if the option price is more than an inconsequential sum, the courts may still view the lease as a sale if "no lessee in its right mind would fail to exercise the option" under the economic realities of the transaction. Clark B., *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 1.5[3] at 1–27 (1980).

In *Atlas Industries*, the Kansas Supreme Court applied the following factors in finding the lessor was actually the financing agency in a sale: (1) the lessor did not select, inspect, ship or install the equipment; (2) the lessor was not a manufacturer or dealer in like equipment; (3) the lease payments were calculated to return to the lessor the purchase price, sales tax, and interest; (4) the lease did not contemplate the return of equipment to the lessor; and (5) the renewal rental was a nominal sum and extended for a period beyond the usable life of the equipment. 216 Kan. at 220, 531 P.2d 41. More recently, the Kansas Supreme Court again found a sale rather than a lease upon the weight of the following facts: (1) the option price for the equipment was nominal as compared to its anticipated market value at the end of the lease term; (2) the lease agreement created a security interest; (3) the lessor filed UCC financing statements on the equipment; and (4) the lessor was not a manufacturer or dealer in like equipment and never took

possession of the equipment. *Executive Financial Services, Inc. v. Pagel*, 238 Kan. 809, 813, 715 P.2d 381 (1986). In contrast to the above factors the Kansas Court of Appeals specified these factors in upholding a trial court's finding of a lease: (1) the lessor stipulated it was in the business of purchasing and leasing such equipment; (3) the lease and financing statements stated the transaction was a lease; (3) the financing agreement between the supplier and the lessor allowed for the lessor to either finance the sale or purchase the equipment for lease; and (4) the title remained with the lessor if and when the equipment was purchased for subsequent leasing.

■ Two federal courts in this district have addressed the very issue of whether a lease agreement between Agristor and a farmer, which was for all relevant purposes identical to the agreement in the instant case, was a lease or a disguised sale. *Agristor Leasing v. Meuli*, 634 F.Supp. at 1214–1215; and *Wight v. Agristor Leasing*, 652 F.Supp. 1000, 1008–1009 (D.Kan.1987). This court agrees with the conclusions of Judge Kelly and Judge Saffels in *Meuli* and *Wight* respectively, that on the balance the transaction between the parties, as evidenced by the pertinent documents, was a true lease and not a financing agreement. The factors supporting this conclusion include: (1) the express terms of the agreement state it is a lease and not a sale; (2) the term of the lease is eight years, which is approximately one-half of the useful life of the Harvestore (The court takes judicial notice that the equipment has a useful life of over 15 years as mentioned in *Meuli*, 634 F.Supp. at 1214.); (3) title remains with lessor; (4) the lease restricts the location of the equipment to that described therein; (5) the lessor retains the right to dismantle and remove the equipment upon termination of the lease at the lessor's expense; (6) the lessee is required during the lease term to maintain the equipment in its original condition absent ordinary wear and tear; (7) at the expiration of the term, the lessee has the option to purchase the equipment for a price equal to the "fair market value" of

the equipment; (8) the lease defines "fair market value" as that price which would be reached in an arms length transaction between an informed and willing buyer, "other than ... a lessee currently in possession and ... a used equipment dealer," and an informed and willing seller; (9) the lessor is obligated to carry casualty insurance on the equipment and lessee is to carry liability insurance; (10) the lease includes an option to renew for a 5–year term with rent in an amount equal to the "Fair Market Rental Value" of such equipment as determined in an arm's length transaction; and (11) Agristor is in the business of purchasing and leasing Harvestores or similar equipment. *See Wight,* 652 F.Supp. at 1008.

The court agrees the weight of these factors is partially offset by several points indicating a sale. First, the rent over the eight-year term appears to equal the purchase price, sales tax, and interest. The lessee is liable for taxes and assessments. Agristor did not select, ship or install the equipment. Finally, Agristor filed UCC financing statements on the equipment.

The weight of the respective factors leans in favor of finding a true lease. The critical factor is that the option purchase price equals the market value of the equipment at the time the option is exercised. Because over one-half of the Harvestore's useful life remains at the end of the lease term, it is a reasonable inference, uncontradicted by any evidence of record, that neither the market value nor the option price is nominal. The remaining useful life also sustains the reasonable inference that Agristor will be retaining substantial residual value in the Harvestore system. It is difficult to overlook in the pertinent documents the parties' express statements of their intent to create a lease, particularly when the transaction as written embodies the critical features of a lease. In addition, the court has little cause to question the parties' expressed intentions when the Achilles' heel to disguised leases, a nominal purchase option price, is not shown to be present. On these facts and the precedential authority of *Meuli* and *Wight,* the court finds no error in the bankruptcy court's order of summary judgment.

IT IS THEREFORE ORDERED that the bankruptcy court's memorandum of decision and order of decision filed May 4, 1988, are affirmed.