In the matter of RETSOD, INC., a Georgia Corporation, Debtor.

Joe DESMOND and John Pera, both Individually and d/b/a Pofac, Inc. and d/b/a Pocal Management, Inc. and d/b/a Pofolks, and Pocal Management, Inc. (formerly POFOC, Inc.), a California Corporation, Movants,

v.

RETSOD, INC., Respondent.

Bankruptcy No. 86–51206.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

April 24, 1989.

---

14. *Phoenix Piccadilly*, 849 F.2d at 1395.

Thomas C. James, III, and Cater C. Thompson of Jones, Cork & Miller, Macon, Ga., for movants.

Wesley J. Boyer and Jerome L. Kaplan, of Arnall, Golden & Gregory, Macon, Ga., for debtor.

Ed S. Sell, III, of Sell & Melton, Macon, Ga., for Coca Cola U.S.A., Ukiah Poultry Co., Sterling Restaurant Supply, Nat. Oxygen, Inc., Crystal Cream & Butter Co., and Elec. City Printing Co.

G. McGregor Jordan, Jr., of McKenney, Jordan & Carey, Macon, Ga., for The State of Cal.

## MEMORANDUM OPINION ON APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF THE CASE

Retsod, Inc., Debtor, filed a petition seeking relief under Chapter 11 of the Bankruptcy Code on July 17, 1986. On July 2, 1987, Debtor filed a motion to sell assets, assign leases, and assume and assign contract rights out of the ordinary course of business. A hearing on the motion was held on July 29, 1987 and continued to July 30, 1987. The Court granted the motion on July 30, 1987. Mr. Joe Desmond and Mr. John Pera, Movants, purchased the assets of Debtor on August 18, 1987.[1] Mr. Pera and Mr. Desmond later transferred their interests to a California corporation known as Pocal Management, Inc.[2] Pocal Management, Inc. is owned and operated by Mr. Pera and Mr. Desmond.

On May 16, 1988, Movants filed with the Court an "Application for Allowance of Administrative Expense." Movants assert that after purchasing Debtor's assets, they were forced to pay delinquent employee wages, utility payments,[3] and lease obligations in order to operate the business. Movants contend that they are entitled to administrative priority status for these payments. Objections to Movants' application have been filed by several creditors as well as by Debtor.

A hearing on Movants' application was held on June 14, 1988 and continued to June 15, 1988. The Court, having considered the evidence presented and the briefs of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

Debtor filed a motion with the Court on July 2, 1987 seeking to sell assets, assign leases, and assume and assign contract rights out of the ordinary course of business. The sale focused primarily on two Po Folks restaurants operated by Debtor. Debtor wished to assign the leases on the two restaurants, as well as to sell all of the assets that made the businesses going concerns.

A hearing on Debtor's motion to sell was scheduled for July 29, 1987. On the morning of July 29, 1987, a meeting was held at the offices of Debtor's attorneys. Present at that meeting were Mr. Wesley Boyer and Mr. Jerome Kaplan as attorneys for Debtor, Mr. David Pippinger as an officer of Debtor, Mr. John Pera as a potential

---

1. The original purchase was made by Mr. Tom Groover and Mr. Pera. Mr. Desmond succeeded to Mr. Groover's interest when Mr. Groover was unable to meet his financial obligations under the purchase agreement.

2. Pocal Management, Inc. was originally incorporated under the name Pofoc, Inc.

3. Movants abandoned their administrative claim for utility payments at the hearing on June 15, 1988.

purchaser, Mr. James Clapp as a financial advisor for Movants, and Mr. Hubert Lovein as attorney for Movants. During this meeting it was made known that Debtor was delinquent on its lease payments on both leases and that the purchase price of Debtor's assets would have to include curing these delinquencies. The possibility of receiving administrative expense priority for curing the lease delinquencies was also discussed, although no firm agreement was reached.

A hearing on the sale of Debtor's assets was held on July 29, 1987 and July 30, 1987. During this hearing, Mr. Boyer represented to the Court that Movants had offered to purchase Debtor's assets for the cash sum of $225,000. Mr. Boyer further informed the Court that a postpetition default existed with respect to each of the leases, however he stated that Movants had agreed to assume and cure the arrearages. Mr. Lovein, in response to Mr. Boyer's statements, then made the following remarks on behalf of Movants:

> The only respect in which I differ with what Mr. Boyer has said the deal is, is with regard to the defaults on the leases. Rather than stating that we are assuming those defaults, it's really we are willing to go forward with the purchase with the understanding that defaults exist on those leases in purchasing them, in effect, subject to those outstanding defaults. We would hope that if the debtor was in a position to pay those sums as an administrative of expense or otherwise in the normal course of this proceeding hereafter, that the debtor would do so. We fully realize that the debtor is not in a position to do so. It may be incumbent on us to do that, to satisfy the landlord. But my understanding is materially different from what Mr. Boyer said.

The Court, at the conclusion of a lengthy hearing, approved the sale of Debtor's assets to Mr. Pera and Mr. Groover.

The sale was closed on August 18, 1987. Movants paid the lease obligations which

were in default. Debtor failed to pay its employees for the period beginning August 10, 1987 through August 17, 1987. Movants paid these employees the wages owed them for this period.

In their application for an administrative expense, Movants assert that the payment of the lease obligations and employee wages constitutes a necessary cost of preserving Debtor's bankruptcy estate. Movants also contend that they are entitled to administrative expense priority status under a theory of subrogation.

## CONCLUSIONS OF LAW

Section 503(b)(1)(A) of the Bankruptcy Code allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C.A. § 503(b)(1)(A) (West Supp.1989).

In *In re Subscription Television of Greater Atlanta,*[4] the Eleventh Circuit Court of Appeals examined the effect of section 503(b)(1)(A) on a trustee's authority to assume or reject an executory contract under section 365. In discussing this category of administrative expense, the Eleventh Circuit set forth the following standard, which must be applied by this United States Bankruptcy Court:

> The priority of an administrative expense is the highest. 11 U.S.C. § 507(a)(1). The allowance of such a priority is to be carefully considered, only after notice and hearing. 11 U.S.C. § 503(b). That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

4. *Broadcast Corp. of Georgia v. Broadfoot (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530 (11th Cir.1986).

789 F.2d 1530, 1532 (11th Cir.1986). The Eleventh Circuit noted with approval the reasoning and analysis of the district court in that case. In determining whether to allow the creditor's claim as an administrative expense, the district court stated, "[r]egardless of the method of calculating the amount of the claimed expense, ... there must be an actual, concrete benefit to the estate before [an administrative claim] is allowable at all." [5]

In *In re Mammoth Mart, Inc.*,[6] the First Circuit Court of Appeals had the opportunity to examine an administrative expense claim for severance pay. In *Mammoth Mart*, the First Circuit stated:

It is established that a debt is not entitled to priority as a cost and expense of administration simply because the claimants' right to payment arises after the debtor-in-possession has taken some action. It is only when the debtor-in-possession's actions themselves—that is, considered apart from any obligation of the debtor—give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration.

*Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 955 (1st Cir.1976).

Although all of the delinquent lease payments for which Movants seek administrative expense priority occurred postpetition, the Court finds that these payments must be divided into two separate categories: the payments for defaults occurring prior to the Court's order approving the sale of Debtor's assets entered on July 30, 1989 and the payments for defaults occurring after the Court's order of July 30, 1989.

■ In considering the lease defaults existing prior to the Court's order of July 30, 1989, the Court finds that Movants knew of the delinquent lease obligations before the hearing on July 29 and 30. Movants made a purchase offer which took into consideration the unpaid lease obligations. The Court approved the sale to Movants based upon the evidence presented at the hearing on July 29 and 30. From the testimony and evidence presented at that hearing, the Court was given the impression that Movants' proposed purchase price included the cost of curing the lease defaults. Based upon this impression, the Court found that Movants' offer was in the best interests of the bankruptcy estate and the general body of creditors. In their present application for administrative expense priority, Movants in effect are simply seeking to recover a portion of the purchase price based upon facts which were disclosed to Movants' prior to the hearing at which Movants offered to purchase the property. The Court is unable to find that these payments provided the type of benefit to the bankruptcy estate contemplated by the Eleventh Circuit in *Broadfoot*. Accordingly, the Court finds that Movants are not entitled to receive administrative expense priority status for the payments.

■ Next, the Court must consider Movants' claim for administrative priority for the payments made to cure the arrearages on the leases which occurred between the July 30 hearing and the closing of the sale on August 18, 1989. These arrearages accrued after Movants agreed to purchase the property and after the Court approved the sale to Movants. Debtor was obligated to make these lease payments. Debtor was operating a business at each location, therefore Debtor derived a benefit from the leases during this period. Movants had to cure the arrearages in order to assume the leases. There is no evidence to show that Movants took into consideration or should have taken into consideration the possibility of curing future arrearages which might accrue after July 30, 1988 when Movants made their purchase offer. Debtor had a duty to maintain its assets. To deny Movants administrative expense priority for these lease payments would allow Debtor to be unfairly benefited. The Court will not allow this to happen. The Court finds that Movants are entitled to administrative expense priority for their

**5.** *Broadcast Corp. of Georgia v. Broadfoot,* 54 B.R. 606, 612–13 (N.D.Ga.1985).

**6.** *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950 (1st Cir.1976).

payment of the lease arrearages accruing between July 30, 1988 and August 18, 1989.

■ Next, the Court must examine Movants' claim for administrative expense priority for their payment of employee wages. Debtor did not meet its payroll obligations for those employees working at the two restaurants purchased by Movants for the period running from August 10, 1988 to August 17, 1988. Debtor was obligated to pay these employees. It is clear that these employees could have filed a claim against Debtor which would have received administrative priority.[7] Thus, if Movants have a right to receive an administrative expense priority, then that right must arise by assignment or subrogation.

When Movants paid the employees the wages owed for the period from August 10, 1987 to August 17, 1987, each of the employees was asked to sign a letter which would authorize Movants to pursue the employee's claim for wages in Debtor's bankruptcy case. The letter provides:

> On August 18, 1987, POFOC, Inc. acquired the two Po Folks Restaurants in Sacramento. Your September 1, 1987 paycheck from POFOC, Inc. is for the period 8/18/87 (Acquisition Date) through August 23, 1987. We have been told that your previous employer, Retsod, Inc. is not presently able to compensate you for services you have rendered from 8/10/87—8/17/87.
>
> We believe this to be a serious injustice and are willing to assist you, first by providing you an advance equivalent to your net pay (i.e. your wages, after taxes and other authorized withholding deductions) you would have otherwise received from Retsod, Inc. Second, we shall provide legal counsel at our expense to assist you in prosecuting toward obtaining your wages from you [sic] previous employer. Any recoveries would be applied toward the repayment of this advance. If you would like us to assist you in this matter, please sign one (1) copy of this

letter in the space provided below, and return it to the office manager, Linda West, at which time you will receive your check.

> By signing this letter, you are:
> 1. Acknowledging receipt of an advance from POFOC in the sum of: $_____.
> 2. Authorizing POFOC to retain counsel to prosecute in your name, at the expense of POFOC, and [sic] administrative priority claim, against Retsod, in the U.S. Bankruptcy Court for the Middle District of Georgia, or in such other courts as may be deemed appropriate.
> 3. Agreeing [sic] that POFOC shall have a security interest to the extent of the advance and any monies recovered for you in any such suit or administrative proceeding.
> 4. Acknowledging that this is a loan advance repayable to POFOC.
>
> By:
> Jim Hurst
> Director of Operations
> For POFOC, Inc.

Mr. Clapp testified at the June 15, 1988 hearing that this letter was not prepared by an attorney. Debtor contends that the letter evidences a loan and therefore Movants are not entitled to administrative priority. Debtor asserts that to allow Movants administrative priority would expose Debtor to double liability since the individual employees could still file administrative claims on their own.

The Court is not persuaded by Debtor's argument. Although the letter does make reference to a "loan," the use of the word "loan" is not controlling. The law does not require the use of magic words.[8] The Court is also mindful of the fact that the priority status attaches to the claim itself, not to the claimant.[9]

In discussing subrogation and assignment of claims, *Collier on Bankruptcy* states:

---

7. 11 U.S.C.A. § 503(b)(1)(A) (West Supp.1989).

8. *See In re Ross,* 94 B.R. 210, 215 (M.D.Ga.1988).

9. *Standard Oil Co. v. Kurtz,* 330 F.2d 178, 184 (8th Cir.1964) (quoting *Woodliff & Co. v. Bush* (*In re Shropshire*), 204 U.S. 186, 189, 27 S.Ct. 178, 179, 51 L.Ed. 436 (1907)).

Subrogation with respect to priority is intended to be given for administrative claims and claims arising during the involuntary gap period.

The equitable doctrine of subrogation is based on common law principles and includes every instance in which one party pays the debt for which another is responsible so long as the payment was made under compulsion or to protect the party making the payment and in the discharge of some existing liability.

An assignment of a claim, on the other hand, is more commonly viewed as benefiting the assignor of the claim who receives immediate payment of his claim. The assignee is under no compulsion and does not take the assigned claim to protect the debtor. Nor is there any liability on the assignee which must be discharged. Unless priority rights already in existence were passed to the assignee, the assignor would be seriously handicapped if obliged to await the full unfolding of the bankruptcy process. The assignee, as volunteer, should derive the benefits given to the assignor.

3 *Collier on Bankruptcy* ¶ 507.07 (15th ed. 1989) (footnotes omitted).

In discussing the doctrine of subrogation, the Second Circuit Court of Appeals has stated:

Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment and in discharge of an existing liability.[10]

The court of appeals further stated that "the doctrine of equitable subrogation 'includes so wide a range of subjects that it has been called the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." ' " [11]

It is clear that Debtor was obligated to pay the employees. It is also clear that each employee would have been entitled to seek payment of his claim as an administrative priority claim under section 507(a)(1). Although Movants were under no legal compulsion to pay the employees, Movants believed it necessary to pay the employees in order to keep the restaurants operating. The Court finds that Movants exercised reasonable business judgment.

The payments to the employees were for the employees' benefit in that they were not required to await the unfolding of the bankruptcy process. That Movants were advantaged because their employees were contented does not change this result.[12] A primary purpose of according administrative priority to claims is to prevent unjust enrichment of the bankruptcy estate, not merely to compensate creditors.[13] In the Court's view, denying Movants' claim for administrative priority would unjustly enrich Debtor's bankruptcy estate.

The Court is not persuaded by Debtor's assertion that Movants made the wage payments as volunteers. Although Movants were under no legal obligation to pay the employees, Movants were put in a position in which they felt compelled to pay Debtor's payroll expense in order to maintain their business operations. The Court finds that this pressure was sufficient to remove Movants from the category of volunteer since Movants made the payments to protect themselves from loss.

Debtor contends that Movants are attempting to assert a class administrative claim and that such a claim would not be allowable in bankruptcy. The Court is not persuaded by Debtor's argument, since the

---

**10.** *Liberty Mutual Insur. Co. v. Borsari Tank Corp.*, 248 F.2d 277, 289 (2d Cir.1957) (quoting *Gerseta Corp. v. Equitable Trust Co.*, 241 N.Y. 418, 150 N.E. 501 (1926)).

**11.** *Id.* (quoting *Pittsburgh–Westmoreland Coal Co. v. Kerr*, 220 N.Y. 137, 115 N.E. 465 (1917)).

**12.** *See In re Paris Indus. Corp.*, 95 B.R. 258 (Bankr.D.Me.1989).

**13.** *In re Strause*, 40 B.R. 110, 113 (Bankr.W.D. Wis.1984).

administrative priority attached to the claims and not the individual employees. *See In re Paris Indus. Corp.*, 95 B.R. 258 (Bankr.D.Me.1989).

Debtor also contends that Movants should have raised their administrative expense claims in adversary proceeding number 87–5098 as a compulsory counterclaim under Bankruptcy Rule 7013.[14] Having examined that adversary proceeding, the Court does not find that Rule 7013 bars Movants' claim for administrative expense priority.

Several creditors have asserted that section 507(d) prevents Movants from receiving administrative priority for the employee wages. These objections have no merit. Section 507(d) applies only to wages receiving priority under section 507(a)(3). Movants' claim pertains to wages receiving priority under section 507(a)(1).

The Court thus finds that Movants are entitled to receive administrative expense priority for their payment of the employee wages.

An order in accordance with this opinion is attached hereto.

## ORDER

Based upon the attached and forgoing findings of fact and conclusions of law; it is

14. R.Bankr.P. 7013.

ORDERED that the "Application for Allowance of Administrative Expense" filed with the Court on May 16, 1988 by Joe Desmond and John Pera, Movants, hereby is granted to the extent that it seeks priority treatment for expenses paid after August 1, 1987; and it is further

ORDERED that Movants hereby are awarded the sum of $20,877.78, representing employee wage claims from August 10, 1987 to August 17, 1987, as administrative expenses; and it is further

ORDERED that Movants hereby are awarded the sum of $4914.14, representing lease payments on the Oshman and Marriott leases from August 1, 1987 to August 18, 1987, as administrative expenses; and it is further

ORDERED that this order be entered on the docket on the date set out below.

SO ORDERED.