In re THE ANSWER—THE ELEGANT LARGE SIZE DISCOUNTER, INC., Virginia Specialty Stores, Inc., Added Dimension, Inc., et al., Debtors.

Bankruptcy Nos. 89 B 20778 through 89 B 20869.

United States Bankruptcy Court, S.D. New York.

June 20, 1990.

Whitman & Ransom, New York City, for Greyhound Financial Corp., Norman N. Kinel, and Jerome L. Davidow, of counsel.

Nachamie Hendler & Spizz, New York City, for debtors; Alex Spizz, of counsel.

DECISION ON MOTION FOR AN ORDER (1) REQUIRING DEBTOR TO PAY POST–PETITION EQUIPMENT LEASE RENTS; (2) ORDERING PAYMENT OF ACCRUED POST–PETITION RENTS AS AN ADMINISTRATIVE EXPENSE; (3) REQUIRING DEBTOR TO PROVIDE ADEQUATE PROTECTION; AND (4) FIXING A TIME WITHIN WHICH DEBTOR MUST ASSUME OR REJECT EQUIPMENT LEASE

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Greyhound Financial Corporation ("Greyhound") a financial institution engaged in the business of making commercial loans to business entities, including the Chapter 11 debtor in this case, Virginia Specialty Stores, Inc. ("Debtor"), has moved for an order pursuant to 11 U.S.C. §§ 361, 365 and 503 of the Bankruptcy Code for alternative relief. Greyhound seeks an order (1) requiring the Debtor to pay certain pre-petition equipment lease rents; (2) ordering the payment of accrued post-petition rents as an administrative expense of the Debtor's estate; (3) requiring the Debtor to provide adequate protection to Greyhound, and (4) fixing a time within which the Debtor must assume or reject the leases entered into between the Debtor and Greyhound.

The Debtor resists Greyhound's motion on the ground that the leases are not "true" leases, but are, instead, security financing agreements which need not be assumed or rejected under 11 U.S.C. § 365.

### FINDINGS OF FACT

1. On November 27, 1989, the Debtor and some of its affiliated entities each filed with this court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and have remained in possession of their assets and continue to manage their businesses as Debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The Debtor and its affiliate entities operate a chain of retail stores throughout the nation for the sale of clothing and wearing apparel for large size women.

3. Greyhound Financial Corporation is engaged in the business of financing commercial enterprises and providing funds for the acquisition of capital and equipment pursuant to written documents, including Equipment Lease Agreements.

4. Commencing in the Fall of 1985, the Debtor sought to obtain from Greyhound approximately $2,500,000.00 to finance the Debtor's acquisition of computer hardware and software equipment, furniture, fixtures, custom designed trade fixtures, display racks, cash wrap counters with office cubicles and other trade fixtures for use in the Debtor's retail stores.

5. In order to establish the availability of financing from Greyhound, the Debtor paid a 1% fee to obtain a written commitment letter. The commitment fee was non-refundable.

6. On September 30, 1985, October 25, 1985, and April 12, 1986, the Debtor and Greyhound executed documents entitled "Executory Lease Agreements" whereby Greyhound, as Lessor, agreed to lease to the Debtor as lessee, the computer equipment and trade fixtures which the Debtor proposed to purchase from third party vendors for installation in the Debtor's various retail units. The agreements provide that the rental payments made by the Debtor will be net to Greyhound. Therefore, the Debtor was responsible for the payment of all sales, use and other taxes with respect to the acquisition of the equipment from the various vendors. Additionally, the Debtor agreed to look solely to the various vendors for any claims based on the quality or condition of the equipment, their performance, merchantability of fitness for use, and further agreed not to assert any such claim, offset or defense against Greyhound.

7. The Debtor did not acquire any of the computer equipment or trade fixtures from Greyhound, but purchased these items independently from third party vendors, without any consultation, notice, or input involving Greyhound. Indeed, the software system which the Debtor acquired for its computer system was licensed by the software supplier exclusively to the

Debtor and could not be transferred to any other entity.

8. The mainframe computer hardware which the Debtor purchased has an eight year technological life span, with four years remaining. The computer equipment currently has a $330,000.00 fair market value in place on the Debtor's premises but, if removed from the debtor's premises, the computer equipment would be worth approximately $110,000.00, exclusive of the cost of removal or the expense to install the computer equipment elsewhere.

9. The Debtor's Chief Financial Officer testified that the Debtor never contemplated returning any of the computer equipment at the end of the term of the contract with Greyhound because the computer equipment was regarded as essential to the ongoing operations of the Debtor. It was not economically feasible to ever consider a return of the computer equipment.

10. Approximately three-fourths of the funds which the Debtor obtained from Greyhound were applied to the purchase of trade fixtures, many of which were custom designed for the Debtor's stores.

11. Under the documents in question, the Debtor is obligated to make monthly payments to Greyhound in the approximate amount of $40,970.00. The rental payments are based on the current Treasury Bill rate for funds. If the Treasury Bill rate rises the payments required under the Debtor's written agreements with Greyhound also rise accordingly.

12. The written agreements provide that the Debtor shall have an option, at the conclusion of the term, to purchase the equipment at the then fair market value. However, the computer equipment is subject to declining technological obsolescence. The trade fixtures will also have substantially reduced values over cost because many of the items were custom designed for the Debtor's stores.

13. The Debtor was in default under the written agreements with Greyhound prior to the filing of its Chapter 11 petition. As of this month, the Debtor owes approximately $286,440.00 to Greyhound under these agreements, of which $20,500.00 was owed prepetition. The Debtor's principal post-petition indebtedness to Greyhound is in excess of $208,746.29, following the Debtor's payment of $20,472.57 to Greyhound on January 17, 1990.

14. The Debtor continues to use the computer equipment and trade fixtures listed in its agreements with Greyhound, and has made no further payments to Greyhound, although the equipment is declining in value due to wear and tear and technological obsolescence. Greyhound's interest in the equipment is eroding and its rights are being prejudiced. The Debtor continues to use and enjoy the use of the equipment without adequately protecting Greyhound's interests.

## DISCUSSION

Once again a court is called upon to decide whether or not a transaction entered into between sophisticated commercial entities whereby one party provides the funds to enable the other party to acquire and operate tangible business property constitutes a "true" lease as to the property in question, or an advance of funds to enable the other party to acquire and operate the property which then serves as the collateral for the advance of funds and which may be acquired by the user at the end of the contractual term by the exercise of a purchase option. As in the case of a magic show, the parties to the transaction use numerous devices to create an illusion which may take on all sorts of appearances to the audience, depending upon who is the beholder. The language may have one meaning for tax depreciation purposes, another significance for judgment creditors, a different appearance for those concerned with the issue of risk of loss, and still another meaning for determining the duration of the economic use and need for the property. Considerable judicial and counsel time has been expended in litigating which factors were more significant than others in the written documents executed by the parties in determining the appropriate label to be given to the transaction. Conversely, in some cases certain factors

are not treated as significant, even if they are expressly included in the agreement. Thus, the 1987 Official Text of the U.C.C. proposed for Arizona, the state whose laws the parties agreed should apply to the interpretation of their written agreements, has expressed that certain provisions in an agreement need not mean that it constitutes a security agreement rather than a lease.

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

Arizona U.C.C. Official Comment § 1–201(37) (1978).

Greyhound reasons that the documents relating to the computer equipment and fixtures used by the Debtor and financed by Greyhound do not create a security interest because of the existence of the following provisions:

(a) The Debtor is obligated to return the Equipment at the end of the Lease term unless it exercises its purchase options;

(b) The Debtor's option to purchase the Equipment is exercisable at fair market value and not less;

(c) The consideration required for the Debtor to become the owner of the property is substantial;

(d) The bargain between the Debtor and Greyhound does not involve the taking of a security interest;

(e) Greyhound's remedies upon the Debtor's default are (i) to enforce performance by appropriate court action or to recover damages; (ii) to terminate the Debtor's rights under the Lease and/or (iii) to take possession of the Equipment and recover damages. Greyhound does not have the right under the Lease to the usual remedy that would accrue to a secured party: the acceleration and recovery of the underlying debt.

■ The factor which Greyhound reasons is most significant is the existence of a purchase option at fair market value of the computer equipment and custom fixtures in place at the Debtor's premises. Courts have held that if a document contains a purchase option that allows the user to purchase the equipment only at its fair market value, it is presumptively a "true" lease. *See In re Celeryvale Transport, Inc.*, 822 F.2d 16 (6th Cir.1987). In *National Can Services Corp. v. Gateway Aluminum Co.*, 683 F.Supp. 719 (E.D.Mo.1988) it was held that an agreement to lease recycling equipment constitutes a "true" lease because the user was obligated to return the equipment at the conclusion of the lease if it did not exercise its option to purchase the equipment at fair market value, despite the fact that the user paid the taxes, assumed all maintenance and repair costs, and assumed the risk of loss or damage to the equipment. The filing of a U.C.C. Financing Statement as a precautionary measure was not a critical factor in barring a determination that a "true" lease was involved. Similarly, an option to purchase farm equipment at the fair market value of the equipment at the time the option was exercised was regarded as significant in finding a "true" lease in *In re Cress*, 106 B.R. 246 (D.Kan.1989). The right to purchase the equipment by the

exercise of a purchase option at fair market value was also critical to finding a "true" lease in other cases. *See In re Aspen Impressions, Inc.*, 94 B.R. 861 (Bankr.E.D.Pa.1989); *In re Triple B Oil Producers, Inc.*, 75 B.R. 461 (Bankr.S.D.Ill. 1987); *In re Air Vermont, Inc.*, 44 B.R. 440 (Bankr.D.Vt.1984). On the other hand, in *In re Beker Indus. Corp.*, 69 B.R. 937 (Bankr.S.D.N.Y.1987), it was observed that the option to purchase used telephone equipment at fair market value was illusory in the absence of evidence that there was a market for used telephone equipment. Nor was the existence of an option to purchase at fair market value dispositive when the agreements conferred on the user the essential attributes of ownership in *In re Catamount Dyers, Inc.*, 43 B.R. 564 (Bankr.D.Vt.1984).

■ Another significant factor in determining whether or not a lease or a security agreement is involved is the objective intention of the parties. The court must determine from the language in the agreement and the facts and circumstances underlying the transaction, whether or not the parties objectively intended to enter into a "true" lease or a security agreement. *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104 (Bankr.S.D.N.Y.1982). In arriving at the intentions of the parties from the facts in each case, the inclusion of an option to purchase at fair market value does not of itself rule out the existence of a security agreement, especially if the property is dependent upon advances in technology so that due to obsolescence or special use, the property is useless to others at the end of the agreement term. In such case, the court will more likely find that the transaction is a security device and not a "true" lease. *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.)*, 780 F.2d 1482 (9th Cir.1986). Where the property or equipment in question has substantially reduced value at the end of the contract term, especially where the property is custom designed for the specific needs of the user so that any reversionary interest claimed by the financing party is significantly less at the end of the contract term, the document will be more indicative of a security interest rather than a "true" lease. *See In re Leasing Consultants, Inc.*, 351 F.Supp. 1390 (E.D.N.Y. 1972), *aff'd*, 486 F.2d 367 (2d Cir.1973).

■ In the instant case, the Debtor purchased computer equipment and fixtures which were custom designed for its various stores throughout the county only after first obtaining a written loan commitment from Greyhound. The Debtor obtained funds from Greyhound and then purchased the computer and store fixtures from various third-party vendors. Greyhound did not inspect any of the equipment before purchase and acquired no documents of title for the equipment other than a U.C.C. Financing Statement. The full risk of loss and maintenance of the equipment was borne by the debtor. The fixtures purchased for the various stores operated by the debtor were custom designed for the Debtor's operations. There was no evidence that these fixtures had any significant value to other potential users. The computer equipment was subject to obsolescence as new technology comes on to the market. Indeed, the present market value of the computer equipment in place, which was stated to be approximately $330,000.00, was reduced to approximately $110,000.00 off the Debtor's premises, excluding the cost of removal and the cost of installation elsewhere. Greyhound had no input with respect to the selection and purchase of the computer equipment and fixtures and merely advanced the funds to the Debtor for their acquisition, subject to the issuance of a commitment loan agreement and the receipt of U.C.C. Financing Statements.

All of the facts and circumstances in this case lead to the inescapable finding that Greyhound financed the Debtor's equipment and fixturing needs and did not have any ownership interest in the computer equipment and fixtures other than as collateral under a security agreement, for which Greyhound was entitled to receive monthly payments calculated to produce a return to Greyhound for the cost of the funds it advanced to finance the equipment.

Although the parties referred to the written arrangement as an "Equipment Lease Agreement", it is clear that their transaction was actually a disguised security arrangement whereby Greyhound simply advanced funds for the debtor's purchase of equipment from third party vendors, which then served as security for Greyhound's loans. Where a business entity purchases equipment directly from third party vendors without any selection or input from the funder, and where the purchaser is totally responsible for taxes, maintenance and loss or damage to the equipment and the equipment was never shipped by or to the funder, the transaction should be regarded in reality as a financing arrangement. *Sierra Diesel Injection Service v. Burroughs Corp.*, 890 F.2d 108, 115–16 (9th Cir.1989). The fact that the debtor has an option to purchase the equipment at a fair market value which is substantially less than the original cost, and that such value will continue to decline as a result of technological obsolescence, will not obscure the economic realities of the relationship between the parties.

## ADEQUATE PROTECTION

█ Because Greyhound has a financial interest in the collateral which it financed and which is currently being used by the Debtor, Greyhound is entitled under 11 U.S.C. § 363 to obtain an order which "shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." Manifestly, the market value of the computer equipment is declining as a result of technological obsolescence. Additionally, the custom designed store fixtures will decline in value with age and use. Greyhound reasons that the monthly payments required under the written documents executed by the Debtor constitute adequate protection for the use of Greyhound's collateral and its loans, especially since Greyhound is not the owner of the equipment and has no realistic equity in the property to serve as an equity cushion. In these circumstances, Greyhound is entitled to an order directing the debtor to pay all past-due post-petition amounts called for under its agreements with the Debtor within thirty days from the date of the order. In the absence of such payment, Greyhound may proceed to foreclose upon its secured interest, unaffected by the automatic stay imposed under 11 U.S.C. § 362(a), which will be deemed lifted for enforcement purposes.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A) and (M).

2. Greyhound's motion for an order directing the Debtor to pay post-petition Equipment Rents, and fixing a time within which the Debtor must assume or reject the so-called Equipment Leases is denied because the written documents in question are disguised security agreements and not "true" leases assumable, or rejectable under 11 U.S.C. § 365.

3. Greyhound is entitled under 11 U.S.C. § 363 to an order prohibiting or conditioning the Debtor's continued use of the equipment in question unless the Debtor pays all past-due post-petition amounts called for under the Agreements in question within thirty days from the date of the order to be entered in this matter.

4. In the event that the Debtor fails to pay Greyhound as ordered, Greyhound may proceed to foreclose upon its secured interest and the automatic stay imposed under 11 U.S.C. § 362(a) shall be lifted for such purpose.

SETTLE ORDER on notice.