**In re JOHN'S MEAT EMPORIUM, INC., Debtor.**

**Bankruptcy No. 192–15090–260.**

United States Bankruptcy Court, E.D. New York.

Jan. 20, 1995.

Helfand & Helfand by Bruce H. Babitt, New York City, for Eastern Auto Motor Corp.

Beal Klasfeld Lentz & Romash by Norman Klasfeld, New York City, for debtor.

Office of the United States Trustee by Douglas E. Spelfogel, Garden City, NY.

*DECISION ON MOTION FOR SUMMARY JUDGMENT*

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before the Court upon a motion by Eastern Motor Corporation ("Eastern") to compel John's Meat Emporium, Inc. (the "Debtor") to pay it an administrative expense of $16,627.20 pursuant to section 503 of the Bankruptcy Code,[1] for the post-petition use of two of its 1987 GMC vans. At a hearing on January 27, 1994, this Court deemed Eastern's motion one for summary judgment, and reserved its decision until a more comprehensive review of the facts could be ascertained.

*FACTS*

The Debtor, a retailer of meat products, owns and operates its business in Astoria, New York. On August 16, 1989, the Debtor and Eastern entered into two separate agreements (the "Agreements"), which, on the documents evidencing them are entitled "Motor Vehicle Lease[s]" Each Agreement provided that the Debtor pay forty-eight (48) consecutive monthly installments of $554.24 for a total of $26,603.52 for the use of two of Eastern's 1987 GMC vans. Although the Debtor made payments under the Agreements up and until March 1992, they were often late, and the situation was fraught with a history of significant payment problems. In fact, the Debtor, prepetition, defaulted under the Agreements and the vans were repossessed. Nevertheless, the Debtor subsequently cured its defaults and the vans were returned to it by Eastern.

After March 1992, the Debtor ceased making *any* payments to Eastern although it continued to use and operate the vans. On

---

1. All section references hereinafter are to the Bankruptcy Code, 11 U.S.C. 101 *et seq.*, unless the text otherwise indicates.

 Section 503 provides, in pertinent part, as follows:
 **Allowance of administrative expenses.**
 (a) An entity may file a request for payment of an administrative expense.

 (b) After notice and a hearing, there shall be allowed administrative expenses, ... including—
 (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages salaries, or commissions for services rendered after the commencement of the case....
 11 U.S.C. § 503.

June 15, 1992, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Even after its filing, the Debtor continued to use the vans without making a single payment to Eastern. Eastern claims that it was not notified of the Debtor's bankruptcy filing,[2] and thus, based on the Debtor's defaults, attempted to repossess the vans in violation of the automatic stay provided by section 362. On July 30, 1992, the Debtor moved this Court to hold Eastern in contempt. The motion, however, was subsequently withdrawn after Eastern agreed to pay a minimal sum to settle the dispute.

On February 8, 1993, Eastern moved this Court to compel the Debtor to assume or reject the Lease agreements, pay for the usage of the vans, and for relief from the automatic stay. On March 5, 1993, the Debtor submitted an affirmation in opposition to the motion which claimed that the Agreements were not leases but, in fact, disguised security agreements.[3] Because these Agreements were not perfected as required by the Uniform Commercial Code, the Debtor asserts that Eastern is simply an unsecured creditor.

In the interest of judicial economy, counsel for both parties attempted to negotiate a settlement. Eastern claims that an agreement was reached ("the Stipulation") whereby the Debtor was to make payments of $554.24 per van each month for the two vans involved in return for the Debtor's retaining possession and use of the vans. In addition, according to Eastern, all the terms and conditions of the original Agreements were to remain in full force and effect, except that the first six monthly installments were to be reduced to $500 per van. Eastern asserts that as the result of this alleged Stipulation, the Debtor's counsel on March 11, 1994 requested that this Court mark Eastern's motion off the calendar as having been settled with a stipulation to follow. This Court's

docket of March 11, 1994, does, in fact, indicate that the motion was "settled, stipulation to follow." Nevertheless, while conceding settlement negotiations did take place, the Debtor strenuously denies that a settlement was ever reached. The Court notes that it never approved the alleged Stipulation.

Eastern further alleges that on June 21, 1993, it demanded the return of its vans because the Debtor was not abiding by the terms of the Stipulation. Eastern claims that the Debtor refused to return the vans without a court order. The Debtor claims it has no knowledge of this occurrence.

On July 1, 1993, at Eastern's request, its original motion to have the Debtor assume or reject the Agreements as leases, pay for the usage of the vans, and for relief from the automatic stay was restored to the calendar for August 10, 1993. At a hearing on that date, the motion was granted to the extent that the automatic stay was lifted, the Debtor was instructed to return the vans, and the Court permitted Eastern to file an administrative claim representing the value of the Debtor's use of the vans during the pendency of this case pursuant to section 503, without prejudice to any objections to such a claim that the Debtor might have.

Eastern then filed the instant motion to compel the Debtor to pay it an administrative expense of $16,627.20 pursuant to said section 503. Eastern bases its computation of its administrative expense upon the provisions of the alleged postpetition Stipulation it entered into with the Debtor. The Debtor does not dispute that it was in possession of the vans, and it is presumed that it also operated the vans throughout the pendency of this Chapter 11 case. At a hearing on January 28, 1994, this Court deemed Eastern's motion as one for summary judgment, and reserved its decision.

## DISCUSSION

■ A motion for summary judgment is governed by Federal Rule of Civil Procedure

---

2. The Court notes that although Eastern asserts that it was not aware of the Debtor's bankruptcy, it, in fact, was listed by the Debtor as a holder of a lease on Schedule G of the Debtor's schedules which accompanied its petition for relief.

3. As has already been observed, Eastern was listed in the Debtor's Schedules as the holder of "leases" on Schedule G, but it was noted therein that they "have nominal purchase options and therefore may be security agreements rather than leases."

56, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bank Procedure 7056.[4] In ruling on a motion for summary judgment, the Court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States,* 841 F.2d 469 (2d Cir.1988); *Bank of India v. Sapru (In re Sapru),* 127 B.R. 306, 319 (Bankr.E.D.N.Y.1991).

■ The court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson,* 477 U.S. at 247–52, 106 S.Ct. at 2509–12; *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985); *Kenston Management v. Lisa Realty Co. (In re Kenston Management Co.),* 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992).

■ The movant for summary judgment bears the burden of proving the absence of any genuine issue as to all material facts which entitle him to summary judgment. *Sapru,* 127 B.R. at 319; *F & L Plumbing and Heating Co. v. New York University (In re F & L Plumbing & Heating Co.),* 114 B.R. 370, 374 (Bankr.E.D.N.Y.1990). Once this initial burden is met, the opposing party must not only set forth specific facts showing that there is a genuine issue for trial, but also that the disputed fact is material. *General American Communications Corp. v. Landell (In re General American Communications Corp.),* 130 B.R. 136, 152 (Bankr. S.D.N.Y.1991); *F & L Plumbing,* 114 B.R. at 374. In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

### The Post–Petition Stipulation

■ Eastern's primary argument is that it is entitled to an administrative expense pursuant to a postpetition Stipulation it entered into with the Debtor. The primary flaw in Eastern's argument, however, is its failure to recognize the legal significance of the fact that the alleged Stipulation was never approved by this Court.

"Whenever there is a dispute [in a bankruptcy case], other than an adversary proceeding, the litigation to resolve that dispute is a contested matter." Rule 9014 Advisory Committee Note (1983). The dispute between Eastern and the Debtor in the case at bar is therefore a contested matter. The Rules recognize that a debtor in possession may settle contested matters by compromise, but "... any compromise between the Debtor and his creditors must be approved as fair and equitable." *Reynolds v. Commissioner,* 861 F.2d 469, 473 (6th Cir.1988); *See* Rule 9019. "In general, debtors cannot bind their estates to compromises absent court approval (citation omitted)." *Saccurato v. Masters, Inc. (In re Masters, Inc.),* 149 B.R. 289, 291 (E.D.N.Y.1992); *See also* Rule 9019 which requires notice and hearing to compromise. It is undisputed that the alleged Stipulation was never approved by this Court, nor was it treated as required by Rule 9019.

For the following reasons, this Court finds that notwithstanding its determination that the Stipulation is not enforceable, there are no disputed issues of material fact and Eastern is entitled to summary judgment as a matter of law on its motion to compel the Debtor to pay it an administrative expense.

### The Agreements

■ The Debtor argues that "the issues here are not complex." This Court agrees. The Debtor, postpetition, continued to utilize Eastern's property without paying anything for its use. Throughout that time, the Debtor's "free ride" so frustrated Eastern that

---

4. All Rule references hereinafter are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

eventually it found it necessary to move this Court to compel the Debtor to assume or reject the leases, as Eastern claimed the Agreements to be, pay for the usage of the vans, and relieve it from the automatic stay. The Debtor, in response to the motion, argued for the first time that the Agreements were, in fact, disguised security agreements. The facts of this case reveal that instead of promptly moving the Court for the characterization of the Agreements as security agreements, the Debtor waited nearly nine months to formalize its assertion, while it utilized Eastern's vans without paying.

## DISCUSSION

This Court is well aware that as a court of equity, it *may* look through form to substance when determining the true nature of a transaction as it relates to the rights of parties against a bankrupt's estate. *Liona Corp. v. PCH Assocs. (In re PCH Assoc.)*, 949 F.2d 585, 597 (2d Cir.1991) (emphasis added); *See In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 54 (Bankr.S.D.N.Y. 1988) (utilization of equity is discretionary). This Court of equity, however, in all its fairness, must also observe equitable defenses to claims that arise in bankruptcy disputes. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 124 B.R. 426, 432 (S.D.N.Y.1991) *appeal dismissed* 982 F.2d 769 (2d Cir.1992); *see also In re Corbi*, 149 B.R. 325, 333 (Bankr.E.D.N.Y.1993) ("Bankruptcy court is to be guided by equitable principles and doctrines."). In fact, bankruptcy courts are routinely called upon to expose disguised security agreements. *See In re The Answer–The Elegant Large Size Discounter*, 115 B.R. 465 (Bankr.S.D.N.Y.1990); *NYNEX BISC v. Beker Industries Corp. (In re Beker Industries Corp.)*, 69 B.R. 937, 939–44 (Bankr. S.D.N.Y.1987); *In re Catamount Dyers, Inc.*, 43 B.R. 564, 566–70 (Bankr.D.Vt.1984).

To allow the Debtor to use Eastern's vans post-petition without making a single pay-

ment for them is not only inequitable, but frustrates the policy of the Bankruptcy Code which promotes doing business with a Chapter 11 debtor by providing priority to administrative expense claims. In addition, bankruptcy is intended as "shield and not a sword." *Fellerman and Cohen Realty v. Clinical Plus and Hirschorn (In re Hirschorn)*, 156 B.R. 379, 381 (Bankr.E.D.N.Y. 1993). Under the facts of this case, particularly in light of the postpetition conduct of the Debtor, this Court declines the Debtor's invitation to characterize the Agreements as unperfected, void security agreements. Although the Court recognizes its authority, under certain circumstances, to take such action, to do so at this late stage would only promote the Debtor's creative and somewhat deceptive attempt to escape liability for the payment of an administrative expense.

Even if the Court were to examine the nature of the Agreements, such analysis would be rendered moot, inasmuch as the Court finds that the Debtor's claim that the Agreements are disguised, void security agreements and thus Eastern should not be paid for the Debtor's use of the vans under the foregoing circumstances, is hereby barred by the equitable doctrines of laches, equitable estoppel, and the broad powers extended to the bankruptcy court pursuant to section 105, all as more particularly hereinafter discussed.[5]

### Laches

The doctrine of laches in bankruptcy was considered by the Second Circuit, which set forth the following essential factors: (1) proof of delay in asserting a claim despite the opportunity to do so, (2) lack of knowledge on the part of the party against which the claim would be asserted, and (3) prejudice to that party by the allowance of the claim. *Indian Motorcycle Assoc., Inc. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham*

---

5. The Court well recognizes that it has deemed Eastern's motion one for summary judgment, and is applying an equitable doctrine other than one asserted by the parties. However, "[o]nce it is determined that there is no genuine issue as to any material fact, and that a party is entitled to the benefit of a judgment as a matter of law,

judgment should be entered even though the legal principles relied on by the court may differ from those that have been urged upon it by the litigants." 10A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d Section 2725, at 112.

*Lambert Group, Inc.*), 157 B.R. 532, 535–36 (S.D.N.Y.1993) (citations omitted).

In bankruptcy, the doctrine of laches is generally utilized in adversary proceedings governed by Part VII of the Rules to bar a plaintiff's claim in a complaint, or a defense raised in a defendant's answer. "The fact that litigation [in a bankruptcy case] is not within the purview of Part VII, does not mean that Part VII is inapplicable." 9 *Collier on Bankruptcy*, Part VII, *Introduction* (15th Ed.1994). Rule 9014 itself provides that certain of the Rules in Part VII apply to contested matters. *Id.*

In the instant case, Eastern has moved to compel the Debtor to pay it an administrative expense to which the Debtor has filed objections. This is a contested matter, and pursuant to Rule 9014, the Rules of Part VII apply. Thus, Eastern's motion and the Debtor's objection are respectively analogous to a complaint and an answer. Thus, laches is hereby applied to the "defense" the Debtor raises in its "answer."

The facts of this case reveal that the Debtor acted unreasonably and inexcusably by its delay in moving this Court to have the Agreements characterized as security agreements. During the first eight months of the Debtor's bankruptcy, it failed to commence an adversary proceeding to determine the validity of Eastern's alleged lien.[6] Notwithstanding the fact that the Debtor did not move to assume or reject the Agreements as leases, arguing after an inordinate delay that they are not leases, it agreed that Eastern's motion be marked settled, stipulation to follow, and subsequently continued to use Eastern's equipment without paying.

"The doctrine of laches asks whether [claimant] in asserting [its] rights was guilty of unreasonable delay that prejudiced the [the party against which the claim is being asserted]." *Drexel Burnham*, 157 B.R. at 538 (citations omitted). The Debtor's conduct in this case leads this Court to the inevitable conclusion that the Debtor was unreasonable in its delay in arguing that the

Agreements are disguised security agreements, and that it is simply involved in a belated attempt to avoid paying Eastern the administrative expense it deserves.

### Equitable Estoppel

Additional reasons exist for the Court's finding. When Eastern's motion to have the Debtor assume or reject the Agreements as leases, pay for the usage of the vans, and lift the stay was restored to the Court's calendar, the Debtor did not actively oppose the motion, particularly its lift stay prong. Thus, the Court lifted the stay and the Debtor peacefully surrendered the vehicles.

If the Agreements were, in fact, security agreements, the Debtor could have been able to successfully defeat Eastern's lift stay motion if it were determined that the Agreements actually gave rise to void, unperfected security agreements. *See, Catamount,* 43 B.R. at 570; Section 544(a).

Although the Debtor did oppose Eastern's motion when it was first brought in February 1993, the Debtor's lack of active objection to the motion at the restored hearing, and its conduct between the time that Eastern's motion was marked off calendar and the restored hearing, equitably estops it from seeking characterization of the Agreements as security agreements.

The elements required for equitable estoppel are delineated in *Hotel Syracuse, Inc. v. City of Syracuse Industrial Development Agency (In re Hotel Syracuse, Inc.)*, 155 B.R. 824, 836 (Bankr.N.D.N.Y.1993) as stated in *In re Delta Hotel of Syracuse, Inc.*, 10 B.R. 585, 598 (Bankr.N.D.N.Y.1981) (citing *United States v. Bedford Assoc.*, 491 F.Supp. 851, 866–67 (S.D.N.Y.1981) *aff'd in part and rev'd in part,* 657 F.2d 1300 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982)).

The essential elements relating to the party to be estopped are: 1) conduct which amounts to false representation or concealment of material facts or which give the

---

6. Rule 7001 describes adversary proceedings in bankruptcy, including a proceeding to "determine the validity, priority, or extent of a lien or other interest in property." The Court reemphasizes that no adversary proceeding was commenced by the Debtor. It was Eastern, in fact, that moved the Court and prompted the Debtor's argument.

impression that the facts are other than as asserted, 2) an intention or expectation that such conduct would be relied upon by the other party, and 3) actual or constructive knowledge of the real facts. The elements relating to the party asserting the estoppel defense are: 4) lack of knowledge of the real facts, 5) reliance on the conduct of the party to be estopped, and 6) action based thereon resulting in a prejudicial change of position.

*Id.*

Eastern relied on the Debtor's representations that it would continue to use and operate the vans pursuant to the terms of the original Agreements, except that the amount of the payments for certain stipulated months would be adjusted to help the Debtor through its financial difficulties during the pendency of its Chapter 11.

Further, by reason of all of the foregoing, the Debtor is equitably estopped from seeking characterization of the Agreements as void, unperfected security agreements.

### Section 105

Section 105(a) of the Bankruptcy Code contains the statutory authority for the Court's equitable powers. This section provides that "[t]he court may issue any order, process or judgment that is necessary to carry out the provisions of [Title 11]." 11 U.S.C. Section 105(a). However, the broad equitable powers under section 105 must be used sparingly. *Lazarus Burman Assoc. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc.)*, 161 B.R. 891, 901 (Bankr.E.D.N.Y.1993) (citation omitted).

Under the facts of this case, equity dictates that section 105 powers may be effectively utilized to carry out the provisions of section 503, which, *inter alia*, defines and provides for the payment of administrative expenses. "Congress granted priority to administrative expenses to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all the estate's creditors." *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986) *citing Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950 (1st Cir.1976) (oth-

er citations omitted). "Congress reasoned that unless the debts incurred by the debtor in possession could be given priority over the debts which forced the estate into bankruptcy in the first place, persons would not do business with the debtor in possession, which would inhibit rehabilitation of the business and thus harm the creditors." *Id.*

Further, the purpose of according priority to administrative claims is rooted in the "fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482, 490 (Bankr.S.D.N.Y.1991) quoting *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking Service, Inc.)*, 851 F.2d 159, 162 (6th Cir.1988). *See In re ICS Cybernetics*, 111 B.R. 32, 41 (Bankr.N.D.N.Y. 1989) (actual use of valuable asset without liability for fair market value not permitted); *In re Jefferson*, 151 B.R. 920 (Bankr.E.D.Mo. 1993); *In re Retsod*, 99 B.R. 499 (Bankr. M.D.Ga.1989).

Generally, under New York law, unjust enrichment consists of the enrichment of one party, at the expense of another party, under circumstances that dictate "in equity and good conscience, the [enriched party] should be required to turn over its money to the [party that has provided the enrichment]." *U.S. v. Nagelberg*, 772 F.Supp. 120, 122–23 (E.D.N.Y.1991) (citations omitted).

In the present case, the Debtor utilized and retained Eastern's vans, yet it did not pay as it was required to do under the Agreements it had with Eastern. To allow the Debtor the use of Eastern's without payment therefor, unjustly enriches the Debtor's estate. This Court will not allow that to happen, although the extent of the enrichment, is to be subsequently determined at an inquest to determine the appropriate amount of Eastern's administrative expense, as discussed below.

The Debtor's desire to have this Court characterize the Agreements as security agreements and avoid payment for the use of the vans thwarts the Congressional intent of providing priority to an entity that provided

an essential service to the Debtor throughout the pendency of its case.

This Court, as a Court of equity, is required not only to act with fairness and sympathy to the Debtor, but other parties as well, *Carlton v. Pollack (In re Carlton)*, 72 B.R. 543, 547 (Bankr.E.D.N.Y.1987), and is charged with preventing injustice and unfairness in adjudicating the affairs of the estate. *Stoner v. The LTV Corp. (In re Chateauguay Corp.)*, 140 B.R. 64, 75 (S.D.N.Y.1992).

*The Administrative Expense Claim*

In order to obtain an administrative expense, the creditor must first show "either that the debtor-in-possession ... incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession. Second, the creditor must show that the transaction resulted in a direct benefit to the debtor-in-possession. *Mammoth Mart*, 536 F.2d at 954. (other citations omitted)." *In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y.1992); *See McFarlin's*, 789 F.2d at 101. *In re Amfesco Industries, Inc.*, 81 B.R. 777 (Bankr. E.D.N.Y.1988). It is undisputed that the Debtor was in possession of, and it is presumed that it used, Eastern's equipment pursuant to the Agreements from the time that the Debtor filed its Chapter 11 until the vans were repossessed. Thus, by allowing the Debtor to continue using its two vans during the pendency of its case, Eastern has furnished the Debtor consideration, and has satisfied the first prong of the administrative expense test set forth in *Mammoth Mart.*

"The second prong of the test requires that the Debtor receive a direct benefit from the transaction. To have received a "benefit," the debtor must have actually used the equipment...." *CIS Corp.*, 142 B.R. at 643. There is no assertion in this case that the Debtor did not use the vans while the automatic stay was in effect.

It is abundantly clear to this Court that the use of the vans directly benefitted the Debtor by allowing it to carry on its business of retailing meat products. "To the extent that a post-petition debtor receives a benefit for the use of property such benefit is allowed as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A), which allows the actual, necessary costs and expenses of preserving the estate." *In re Thomson McKinnon Securities, Inc.*, 152 B.R. 840, 842 (S.D.N.Y.1993).

Additionally, "[w]hen a debtor-in-possession uses a creditor's equipment to generate funds for the operation of a business in bankruptcy the creditor's expense of providing that equipment is an actual and necessary cost of preserving the estate under § 503(b)." *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co., Inc.)*, 991 F.2d 682, 687 (11th Cir.1993).

The material issues of fact in determining whether Eastern is entitled to an administrative expense are undisputed, and for the reasons stated above, Eastern is entitled to summary judgment as a matter of law. Thus, an administrative expense for Eastern will be allowed for the usage of the vans by the Debtor, from the time it filed its petition until Eastern recovered its vans pursuant this Court's granting of the lift stay motion.

Although Eastern has calculated the amount of its administrative claim under the terms of the prepetition Agreements, an inquest must be conducted as to allow the Court to examine the reasonableness of the amount of the claim.

*CONCLUSION*

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157(a) and it is a core matter pursuant to 28 U.S.C. 157(b)(2)(B).

2. Eastern's motion for summary judgment is granted insofar as it is entitled to an administrative expense.

3. Eastern is hereby directed to schedule a hearing to determine the amount of its administrative expense claim on notice to the Debtor and its attorney.

4. SETTLE AN ORDER CONSISTENT WITH THIS OPINION.